IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FRANCIS C. MBEWE, # 360922 | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v | * | Civil Action No.  ELH-14-3478 |
| | * | |
| DEPARTMENT OF PUBLIC SAFETY AND | * | |
| CORRECTIONAL SERVICES | * | |
| AND CORRECTIONAL MENTAL HEALTH | * | |
|   CENTER-JESSUP, | * | |
| | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

Francis C. Mbewe, the self-represented plaintiff, is an inmate at the Correctional Mental

Health Center, Patuxent Institution ("Patuxent").[1]  On November 3, 2014, he filed a "Petition to

Show Cause for an Injunction" (ECF 1), naming as defendants the Department of Public Safety

and Correctional Services ("DPSCS") and the Correctional Mental Health Center – Jessup.[2]  He

claims that defendants fail to protect him from violence; he was administered psychotropic

medication against his will even though he does not have a mental illness; he was denied access

to the court because defendants refused to deposit his $40 million dollar check so that he can

---

[1] *See* http://www.dpscs.state.md.us/inmate/search.  Mbewe did not inform the Clerk of his current address in this case although he is required to do so by local rule  *See* Local Rule 102.a.1.b.iii (D. Md. 2016); *see also* ECF 2, 8 (reminding Mbewe of his obligation to maintain a current address on file).  No court mail sent to Mbewe in this case was returned by the U.S Postal Service.  I shall therefore assume that Mbewe received all mail sent to him in this case.

I also note that Mbewe is litigious and, in other cases, he has notified the Clerk of address changes.  *See*, *e.g.*, *Mbewe v. Bishop*, *et al.,* Civil Action No. JKB-14-1676 (D. Md.), ECF 14; *Mbewe v. Morgan*, Civil Action No. JKB-13-174 (D. Md.), ECF 9; *Mbewe v. Stouffer et al.,* AW-12-3138 (D. Md.), ECF 13; *Mbewe v. David, et al*, Civil Action No. AW-12-3344 (D.Md.), ECF 41.

[2] Jessup and Patuxent are the same institution.

retain counsel for his habeas corpus proceeding; he was refused access to the prison law library; he was denied the opportunity to contact witnesses to testify at his habeas corpus proceedings; and he was denied access to his Bank of America account to obtain funds for goods and services. ECF 1 at 1-2. Mbewe seeks to enjoin defendants from denying him access to witnesses, recreation, exercise, special diet, showers, and clean air ventilation and to his Bank of America account; withholding his $40 million check; denying him protection from harm by other inmates; and forcibly administering psychotropic medication to him. ECF 1 at 15-16.

Because Mbewe's allegations concerning forced administration of medication and danger posed by inmates and others, if true, raised serious questions about his immediate safety and well-being, I directed counsel in the Office of the Attorney General to file an emergency response as to these two claims. I also directed Mbewe to supplement the petition using pre-printed forms for filing a civil rights complaint, and to pay the filing fee or file a motion to proceed in forma pauperis. ECF 2. Although Mbewe filed a motion for leave to proceed in forma pauperis (ECF 5), he failed to supplement his remaining claims. Therefore, I shall consider those remaining claims as abandoned. Accordingly, in analyzing Mbewe's request for preliminary injunctive relief, I shall consider only Mbewe's claims concerning forced administration of psychotropic medication and failure to protect.[3]

---

[3] In regard to plaintiff's other claims, Kristina M. Donnelly, Litigation Coordinator for Patuxent Institution, states in her Declaration (ECF 4-1) that Mbewe is entitled to attorney visits and telephone calls and is not denied access to the courts or to contact witnesses to prepare for his federal habeas corpus proceeding. ECF 4-1, ¶¶ 9-10. Mbewe may request legal materials from the prison library and they are delivered to him, although he may not visit the library due to his mental health. Patuxent does not have and never received a $40 million dollar check payable to Mbewe. *Id*. ¶ 11. She attests that Mbewe has not been denied access to a Bank of America account while at Patuxent, and he may access his account by creating a power of attorney or transferring funds from that account to his inmate banking account via direct deposit. *Id.*

Further, I take notice that Mbewe filed many actions in this court, none of which proceeded to discovery or to trial. *See Mbewe v. Bishop, et al.,* Civil Action No. JKB-14-1676

On January 16, 2015, I notified Mbewe that counsel's response could be construed as a motion for summary judgment, and advised him that he was entitled to file an opposition with materials in support. ECF 6; ECF 7.  Mbewe did not file an opposition.  The notice informing Mbewe of his right to oppose the response was sent to Western Correctional Institution, not to Patuxent Institution (ECF 7).  So, on November 23, 2015, I directed the Clerk to mail a copy of the notice to Mbewe at Patuxent Institution.  ECF 9.  And, I granted Mbewe until December 23, 2015, to file an opposition, but he did not do so.  *See* Docket.

After considering the pleadings, exhibits, and applicable law, I will deny the Petition for Injunctive Relief, for the reasons that follow.[4]

## I.  BACKGROUND

Mbewe filed his suit while he was an inmate at the Correctional Mental Health Center – Jessup.  ECF 1 at 2, ¶ 1.  The majority of Mbewe's petition for injunctive relief addresses his concern that he was labeled a snitch and as a result was at risk of harm from fellow inmates during the time he was housed at Western Correctional Institution ("WCI").  ECF 1.

Mbewe was transferred from Maryland Correctional Training Center ("MCTC") to WCI on July 15, 2013, after he requested protective custody housing due to threats and fear of assault. *Id*. at 2-3, ¶3.[5]  On August 23, 2013, his request for protective custody at WCI was denied.  *Id.* at

_____

(D. Md. December 23, 2016), appeal pending No. 16-7760; *Mbewe v. Morgan,* Civil Action No. JKB-13-0174 (D. Md. December 11, 2013); *Mbewe v. Webb*, Civil Action No. AW-12-1632 (D. Md. November 22, 2013), dismissed on appeal, No. 13-7985 (4th Cir. December 16, 2013); *Mbewe v. Sowers*,  Civil Action No. AW-11-1556 (D. Md. December 28, 2011); *Mbewe v. Sowers*, Civil Action No. AW-11-573 (D. Md. September 29, 2011).

[4] If Mbewe intends to pursue his claims, he may raise them in a separately filed complaint.  By so stating, I express no opinion regarding the merits of his claims.

[5]  *See also Mbewe v. Sowers*, Civil Action No. AW-12-3138 (D. Md. August 20, 2013) (granting summary judgment in favor of correction defendants where Mbewe alleged, *inter alia*, that MCI-H staff failed to protect him from harm after he was labeled a snitch).

3, ¶ 4.

Then, on October 17 and 18, 2013, Mbewe requested a cell transfer due to multiple problems he claimed to be having  with his cellmate because he was labeled a snitch, and his request was denied.  ECF 1 at 3, ¶¶ 5, 6.  Plaintiff pursued grievance proceedings.  *Id.* ¶¶ 7-9. Mbewe alleges that on March 9, 2014, he partially swallowed butter, which he believed was mixed with feces, and indicates that other inmates had handled his food tray.  *Id.* at 5, ¶ 10.

Mbewe claims he was admitted to the WCI infirmary on April 4, 2014, for food poisoning and snake bites.  Mbewe states he was attacked by a "black on command snake which coiled itself around his body and identified itself as Shane Weber, the chief psychologist; and then there after by Nurse Maria all WCI employees."  *Id.*  When Mbewe returned to his cell from the infirmary, his cellmate called him a snitch and threatened him.  *Id.* at 6.

Mbewe complained to Correctional Officers Lark and Robert on April 15, 2014, stating that his cellmate had threatened him and that he feared for his safety.  ECF 1 at 6, ¶ 11.  He asked to be moved to a different cell.  Lark entered the cell, spoke to the cellmate, and told Mbewe to return to the cell.  *Id.*  Mbewe states he was struck by his cellmate and, when he attempted to defend himself, Officer Robert sprayed "a whole canister of mace on him."  *Id.* at 6-7, ¶ 11.[6]  Mbewe also claims Warden Wayne A. Webb put a "Klu Klux Klan hit" on him.  *Id.* at 7, ¶ 11.

Mbewe also alleges that he was stabbed by Officer Wilburn while other officers were conducting a cell search in cell 4-B-12.  *Id.* He does not state when or in what facility this

---

[6] Mbewe does not specifically raise a claim of use of excessive force with regard to this allegation.

incident occurred.[7]

Mbewe states he is housed in a mental health facility against his will even though he is able to distinguish right from wrong. *Id.* at 7, ¶ 12. Mbewe complains that he is housed with mentally unstable and violent inmates who pose a threat to him. *Id.* In addition, he complains that he has been denied showers, recreation, and a special diet. *Id.*

## II. RESPONSE TO PETITION

The response filed by the Office of the Attorney General (ECF 4) is accompanied by one page of Mbewe's mental health records dated November 14, 2014 (ECF 4-2), and a Declaration executed by Kristina M. Donnelly, Litigation Coordinator for Patuxent. ECF 4-1. The submissions indicate that Mbewe suffers from paranoid schizophrenia, for which he is receiving treatment. ECF 4-2. His treatment goals include reducing incidents of hallucinations and paranoia. *Id*. He expresses delusional thought and is not medication compliant. *Id.*

Donnelly attests that Mbewe has no known enemies at Patuxent. ECF 4-1 at 1, ¶ 3. Further, she avers that, immediately following discovery of contraband in plaintiff's cell, Mbewe raised an unfounded allegation that he was assaulted by two officers at Patuxent Institution. *Id*. ¶4.

Further, Donnelly states that DPSCS is prohibited from forcibly medicating an inmate except when there is a danger of imminent harm to the inmate, or others. *Id.* ¶5. She states that Mbewe was forcibly administered medication on one occasion on September 5, 2014. *Id*. at 2, ¶ 6. The forced medication was allegedly administered in response to Mbewe acting violently in the day room at Patuxent, which resulted in damage to a television and the cable. ECF 4 at 2;

---

[7]   Kristina Donnelly, Litigation Coordinator for Patuxent, executed a Declaration that appears to indicate the incident involving Wilburn arose during a search of Mbewe's cell, where contraband was discovered. ECF 4-1, ¶ 4.

ECF 4-2.  Mbewe does not refute these averments of fact.

### III.  DISCUSSION

### A.

The Court is mindful of its obligation to construe liberally the submissions of a self-represented litigated.  *See*, *e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Nevertheless, a preliminary injunction is an extraordinary and drastic remedy.  *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).  For injunctive relief to be granted, the claimant must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 19 (2008).  All four requirements must be satisfied. *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Prison management functions, such as security, must be left to the broad discretion of prison administrators to enable safe and effective management.  *See*, *e.g., Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991); *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980).  Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances.  *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).  A plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

### B.  Forced Administration of Medicine

Unquestionably, inmates have a "'significant constitutionally protected liberty interest in

avoiding the unwarranted administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003) (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)). "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009).

The Supreme Court has said that forcible medication of a prison inmate requires balancing the state's penological interests and the inmate's retained liberty interest and that forcible medication is permitted if the inmate is dangerous to himself or others and treatment is in the inmate's medical interest. *See Washington v. Harper*, 494 U.S at 223. Such forcible medication, however, requires certain procedural safeguards, including at least 24 hours' notice prior to a hearing—such notice to include the inmate's diagnosis and the basis for the physician's belief that medication was necessary; the inmate's presence at the hearing; the opportunity to present witnesses; the opportunity to cross-examine witnesses; and the right to receive guidance from a lay advisor. *Id*. at 231. [8]

Decisions made by professionals concerning the treatment of involuntarily confined patients are presumptively valid, and should not be second-guessed by the court. *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). Nonetheless, a due process violation will be found if the treating professionals substantially departed from the exercise of accepted professional judgment. *See Patten v. Nichols*, 274 F.3d 829, 842 (4th Cir.2001). But, neither malpractice nor a difference of opinion among experts as to the proper treatment of a patient will support a finding that due process was violated. *Id.* at 845; *see also Kulak v. City of New York*, 88 F.3d 63,

---

[8] For discussion of Maryland's procedures as to forced medication, *see, e.g., Beeman v. Dep't of Health and Mental Hygiene*, 107 Md. App. 122, 666 A.2d 1314 (1995); *Beeman v. Dep't of Health & Mental Hygiene*, 105 Md. App. 147, 658 A.2d 1172 (1995).

75 (2d Cir.1996).

Counsel cites to the Donnelly Declaration for the proposition that the "forced medication was conducted in response to the Plaintiff acting violently in the day room which resulted to damage to the television and cable." ECF 4 at 2; ECF 4-2.  The Donnelly Declaration states that inmates may not be forcibly medicated unless there is imminent danger, and on September 5, 2014, Mbewe was forcibly medicated.  Mbewe's mental health records suggest support for counsel's representation, but provide no specific details about the forced medication incident.

Regarding plaintiff's request for preliminary injunctive relief, Mbewe does not allege the medicine was administered in a manner that violated the above procedural protections or that he is receiving ongoing forced administration of medication.  As such, the record is insufficient to evaluate whether Mbewe "is likely to succeed on the merits or "likely to suffer irreparable harm in the absence of preliminary relief."  Nevertheless, in light of the heavy burden that a claimant must satisfy, and the deference accorded to prison administrators and mental health practitioners under these circumstances, Mbewe falls far short of showing that "the balance of the equities tips in his favor and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 19 (2008).  Indeed, in the body of his Complaint, he includes no allegations concerning forced medication.  *See* ECF 1, ¶¶ 1-13.

## C.  Failure to Protect

The right to be free from cruel and unusual punishment includes the right to be protected from a substantial risk of serious harm at the hands of other inmates.  *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir. 1997); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).  "The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials."  *Raynor v. Pugh*, 817 F.3d 123,

127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832).  Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and ... 'reasonable measures to guarantee the safety of the inmates.' " *Raynor*, 817 F.3d at 127 (citation omitted).

To be sure, "not every injury suffered by a prisoner at the hands of another 'translates into constitutional liability for prison officials responsible for the victim's safety.' " *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (citation omitted).  But, "corrections officers have 'a duty to protect prisoners from violence at the hands of other prisoners,' for '[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Raynor*, 817 F.3d at 127 (citation omitted) (alteration in *Raynor*).

Mbewe provides no information to refute Donnelly's averments that he has no enemies at Patuxent and that his allegations of harm at the hands of correctional officers were made only after a search uncovered contraband in his cell.  The information before the court is insufficient to show Mbewe is likely to succeed on the merits or that he will suffer irreparable harm in the absence of an injunction.  Mbewe fails to meet his burden to show the extraordinary relief required for a preliminary injunctive to issue, and the petition for injunctive relief will be denied as to this claim.

### IV.  CONCLUSION

For the reasons set forth above, I will deny the petition for injunctive relief (ECF 1).  A separate Order follows.

March 24, 2017_____          _____/s/_____
Date                                     Ellen L. Hollander
                                         United States District Judge

9